CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 11 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RONALD A. DAWSON, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:05cv00314 |
| v. | ) |
| JO ANNE B. BARNHART, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States Magistrate Judge |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Ronald A. Dawson ("Dawson") brought this action for review of the decision of the Commissioner of Social Security denying his claim for Child's Disability Benefits ("DIB") and Supplemental Security Income ("SSI") under Title XIV of the Social Security Act. The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is before the court on defendant's motion for summary judgment. Having reviewed the record, and after briefing and oral argument, the case is now ripe for decision. As the ALJ's decision is amply supported by evidence in the record, it must be affirmed.

I

Dawson was born on November 14, 1982 and claims disability beginning on November 15, 2001 due to a breathing impairment resulting from heat exhaustion suffered during basic training with the Marines, as well as a mental (schizoaffective) disorder. (Administrative Record, hereinafter R., at 19, 83, 336) Dawson graduated from high school in 2000, (R. 104), and began basic training with the United States Marine Corps in January, 2001. (R. 335)

Scoring well on certain standardized tests,[1] Dawson was approved for air traffic controller school. (R. 393) During basic training, however, Dawson developed pneumonia resulting in lung scarring and was released from military service. (R. 336, 368) After discharge from the Marines, Dawson worked briefly as a cashier at a convenience store, quitting after one month. (R. 116, 340) Dawson testified that he left that job because there was "too much standing and walking around." (R. 341) He also noted that "I wasn't comfortable with so many different people coming in and out." Dawson has not worked since November, 2001. (R. 116)

In addition to respiratory difficulties, Dawson claims a mental impairment consisting of "depressed moods, crying spells, paranoid thoughts and feelings, auditory hallucinations, visual hallucinations, panic attacks, chronic sleep loss, memory impairment, self mutilations and ritualistic behavior with comprehensive social anxiety." (Pl.'s Br. 3)

In the administrative decision rendered on November 9, 2004, the ALJ found that the medical evidence established that Dawson had severe impairments consisting of schizoaffective disorder and residuals of pneumonia (lung scarring). (R. 22) The ALJ found that Dawson's respiratory condition limited him to less than the full range of light work, including jobs requiring him to lift up to twenty pounds and stand, walk, or sit for six hours in an eight hour day. (R. 23-24) The ALJ determined that Dawson would be unable to work around fumes, dust, chemicals or temperature extremes. (R. 394, 396) As to the claimed mental disorder, the ALJ carefully examined the evidence concerning Dawson's claimed hallucinations and found that his symptoms did not rise to the level of a listed impairment under the regulations. (R. 20) However, the ALJ noted that Dawson had moderate difficulty maintaining social functioning and

---

[1] Dawson scored a 165 on an IQ test and 1410 on the SAT. (R. 397-98)

mild difficulty maintaining concentration, and, therefore, would need work involving minimal contact with the public or co-workers. (R. 23, 394, 396) Relying on the vocational expert testimony that Dawson can perform a significant number of jobs in the national economy, the ALJ concluded plaintiff is not disabled under the Act. (R. 25, 26)

The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) when the Appeals Council denied plaintiff's request for review. (R. 7-9) Plaintiff then filed this action challenging the Commissioner's decision.

## II

Dawson's appeal focuses principally on his claimed mental impairments. First, Dawson contends that the ALJ's assessment of his residual functional capacity fails to properly take into account the extent of his mental impairment. Second, Dawson argues that this case should be remanded for consideration of new evidence not part of the administrative record, consisting of a treating medical source's statement that it "is highly unlikely that [Dawson] would be able to obtain or maintain a job secondary to his mental disorder." (Pl.'s Br. 3)

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

3

## III

Dawson first argues that the ALJ erred in her assessment of the evidence of his mental condition contained in the record. Dawson argues that the ALJ should have taken into account his low Global Assessment of Functioning ("GAF") score along with his "memory loss, impaired judgment and loss of concentration coupled with disturbances of motivation and mood." (Pl.'s Br. 3) Record evidence lists Dawson's GAF scores as ranging from 41 to 50. (R. 283, 285, 286, 291)

The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The scale ranges from 0 to 100, with serious impairment in functioning at a score below 50, moderate difficulty in functioning at 60 or below, some functioning difficulty at 70 and below, and so forth. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994). An individual with a score ranging from 41 to 55 has serious symptoms or serious difficulty in social, occupational, or school functioning. Id.

The Commissioner argues that a low GAF score alone is not determinative of disability, and that the regulations provide that a GAF score does not have a direct correlation to the severity requirements of the listings, as a GAF score may be based largely upon subjective statements. (Def.'s Mot. Summ. J. 19-20). Dawson cites no cases or regulations suggesting that a GAF score below 50 is determinative of disability. In fact, courts have held that the GAF scale is intended to be used to make treatment decisions, and nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score. Wilkins v. Barnhart, 69 Fed. Appx. 775, 780 (7th Cir. 2003). A GAF

4

score may assist in the ALJ's determination of a claimant's residual functional capacity, but is not essential to such a determination. See, e.g, Lopez v. Barnhart, 78 Fed. Appx. 675 (10th Cir. 2003); Ham v. Barnhart, No. 3:01cv368, 2002 U.S. Dist. LEXIS 25438, at *19 (E.D. Va. July 19, 2002) (finding a GAF of 50 not alone sufficient to render an individual unable to work).

The Commissioner contends that Dawson's subjective mental complaints are undermined by his inconsistent accounts of them. (Def.'s Mot. Summ. J. 20-21) The ALJ noted discrepancies between Dawson's testimony and the medical evidence concerning the extent and nature of his claimed mental issues. "Allegations to treating mental health providers do not reflect hallucinations at a frequency or duration consistent with the testimony. Also within the medical evidence Mr. Dawson has reported improvement in hallucinations and paranoia with medication." (R. 23) Dawson argues that the ALJ's finding that he was not totally credible as to his claimed mental impairment was erroneous, and that any inconsistencies in his recitation of his symptoms are reflective of his condition, rather than his credibility. (Pl.'s Br. 4)

It appears from the record that the ALJ did a thorough job of assessing Dawson's mental impairment and assessing his complaints in light of the record evidence. The ALJ noted that Dawson does not meet the B or C criteria for an impairment at Listing level of 12.03, 12.04 or 12.08. The ALJ noted that Dawson had a relationship with a girlfriend and has a male friend, works out in a gym frequently, visits his family, dines with his mother at a restaurant daily, worked in a convenience store briefly and has no difficulties with treating sources. (R. 22) As such, the ALJ concluded Dawson has moderate difficulty in maintaining social functioning. (R. 22) The ALJ noted that Dawson reported that he watched movies, played videogames and worked on his car, reflective of only a mild difficulty maintaining concentration, persistence or

5

pace. In order to compensate for these issues, the ALJ concluded that he would need work involving minimal contact with the public or co-workers. (R. 23)

The ALJ's credibility determinations are entitled to great weight. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") This court is charged with reviewing the record for substantial evidence. In doing so, the court must not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Craig v. Charter, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the undersigned finds that substantial evidence supports the ALJ's credibility determination in this case. See Johnson v. Barnhart, 434 F.3d 650, 658-59 (4th Cir. 2005).

## IV

Dawson next argues this case should be remanded for consideration of new evidence. The new evidence consists of medical records post-dating the Commissioner's decision, submitted in conjunction with plaintiff's brief. In particular, Dawson focuses on a comment at the end of a medical record dated May 2, 2005 signed by Beverly A. Giltraine, M.S., F.N.P., and George W. Ford, M.D., a doctor at the Veterans Administration Medical Center in Salem, Virginia. The specific record in question is a Compensation & Pension Exam performed by the Department of Veterans Affairs.[2] Dawson focuses his argument on a comment in that note

---

[2]As the ALJ's decision noted, Dawson receives disability benefits from the Department of Veterans Affairs. (R. 20)

6

concerning his ability to work, an issue reserved to the Commissioner. The comment provides as follows:

> This veteran's COPD would impact on his ability to perform in a highly physical job. If his only problem was respiratory he would be able to obtain a sedentary job. However, after this interview and talking with Dr. Mueller, it is highly unlikely that this veteran would be able to obtain or maintain a job secondary to his mental disorder.

Although the determination of disability is an issue reserved to the Commissioner, Social Security regulations require that the Commissioner review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Given these regulations, the issue becomes whether this case should be remanded to consider this additional evidence. Sentence six of 42 U.S.C. § 405(g) authorizes the court to remand a case to the Commissioner upon a showing of new, material evidence, for which good cause can be shown for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). Sentence six applies specifically to evidence not incorporated into the record by either the ALJ or the Appeals Council.

The Fourth Circuit in Borders held that a reviewing court may remand a case to the Commissioner on the basis of newly discovered evidence if four prerequisites are met. Borders, 777 F.2d at 955. First, the evidence must relate back to the time the application was first filed and it must be new, in that it cannot be merely cumulative. Id.; see also Wilkins v. Sec'y, Dep't Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). The evidence must also be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her. Borders, 777 F.2d at 955. There must be good cause for the

7

claimant's failure to submit the evidence when the claim was before the Commissioner. Id. Finally, the claimant must present to the remanding court at least a general showing of the nature of the new evidence. Id.

This case does not warrant remand under the standard set forth in Borders. Unlike in Borders, where a remand was required so that the agency could consider the impact of a third laminectomy performed after the final decision of the agency, 953 F.2d at 954, there is nothing new in the medical records submitted by Dawson following the agency's decision. Dawson has not undergone any new medical procedures and the additional records do not reflect any new objective clinical or medical findings. As these records are largely cumulative of those reflected in the medical records already before the Commissioner, they provide no basis for a remand under Borders.

For example, the most recent note, dated August 3, 2005, from Dr. Sachin N. Mehta, a psychiatric resident at the Salem, Virginia VA Medical Center, states: "[p]atient says he continues to be pretty stable currently in terms of his symptoms. He does complain of occasional auditory and visual hallucinations. The work up for all of it has been negative organically and says it does not bother him now since it has been present for some time now and says he has been able to function with it."

Further, the note of May 2, 2005, upon which Dawson founds his argument, provides no basis for remand under Borders. The note contains no explanation whatsoever for the author's opinion that it is "highly unlikely" that Dawson could obtain or maintain a job. The only rationale provided for this opinion is that it comes "after this interview and after talking with Dr. Mueller." There is, however, nothing in the text of the note that provides any clue as to the basis

8

for this opinion. Indeed, the May 2, 2005 note does not appear to concern Dawson's mental status except to note that "[t]he veteran is essentially housebound" and he "does not like people."

V

Accordingly, the decision of the Commissioner is affirmed, and defendant's motion for summary judgment is granted.

In affirming the final decision of the Commissioner, the court does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

**ENTER:** This 11 day of April, 2006.

Michael F. Urbanski
United States Magistrate Judge

9